*Franklin,*
*December,*
*1814.*

J. Ward
*vs.*
Morril and
L. Ward.

---

Robert Peaslee Administrator *de bonis non* of Zacheus Peaslee
*vs.*
William Barney Administrator of Udney Hay.

### In Chancery.

No man can, either at law or in a Court of equity, set aside any of his contracts, because fraudulent on his part; nor can his heir set aside such contract; nor does his administrator, even in the case of an insolvent estate, so far represent the creditors, as that such contract can be set aside at his suit, but the creditors alone have a right to impeach and set aside such contract.

THIS was a Bill of Review brought to reverse a decree of this Court, made in favour of the administrator of Udney Hay, against the administrator of Zacheus Peaslee. It appeared by the record, that William Barney, administrator of Udney Hay, deceased, exhibited his bill against Zacheus Peaslee in his life time, setting forth that Udney Hay in his life time, was seised and possessed of sundry large tracts of land situate in Underhill in the County of Chit-

*Chittenden,*
*December,*
*1814.*

*Chittenden*
December,
1814
Peaslee
*vs.*
Barney.

tenden, and, being so seised and possessed, did, on the 21st day of January, 1804, by his deed of that date, purporting to be for the consideration of $2000, convey to the said Zacheus Peaslee his heirs and assigns certain of the same tracts of land (described in the bill).—That on the 24th day of January, 1804, Udney Hay, in like manner by his deed of that date, purporting to be for the consideration of $1600, did convey to the said Zacheus Peaslee certain other tracts in said Underhill (describing them).—That on the 9th day of April, 1804, the said Udney Hay did in like manner convey to the said Zacheus Peaslee, his heirs, &c. by his deed of that date, purporting to be for the consideration of $—— the same tracts of land, as described in the deeds of the 21st and 24th of January.— And the bill charges that the whole of said deeds were given fraudulently, without any consideration, with intent to injure and defraud the creditors and heirs of the said Udney Hay. It was also alleged in the bill that the said Zacheus Peaslee held the said lands in trust for the said Udney Hay, and praying that the said deeds might be set aside and declared void, or that the said lands so held in trust might be conveyed to the Orator. Pending the bill, Zacheus Peaslee died, and the bill was revived against Sarah Peaslee, administratrix of Zacheus Peaslee, and after her death against Robert Peaslee administrator *de bonis non* of Zacheus Peaslee. The bill was exhibited January term, 1808. The decree recites the substance of the bill—the several revivals and continuances until January term, 1813, when the same was pronounced, without stating any plea or answer, or, in what shape the cause was heard, and con. cludes in the following words—" Therefore the Court, after a full hearing of the cause, do pronounce this their decree final, that is to say, the Court do declare, order and decree, that the following deeds, viz. (describing the deeds as above set forth) be annulled, vacated and held for nought, and that as well the said Robert Peaslee in his capacity of administrator *de bonis non* of the said Zacheus Peaslee, as the heirs of the said Zacheus Peaslee and all other persons claiming the said land by, through or under the said Zacheus Peaslee, the intestate, shall be forever enjoined from producing said deeds in evidence, for the maintenance of any title to the said lands by virtue of said deeds, and that the Orator have his costs."

The plaintiff in his bill of review, assigned the following errors.

Chittenden,
December,
1814.

Peaslee
vs.
Barney.

1st. That the administrator of Udney Hay was not competent to impeach the said deeds, as being fraudulent either against the creditors or heirs of Udney Hay.

2dly. That it does not appear in the bill or decree, that any creditor of Udney Hay, whose claims existed at the time of the execution of the said deeds, had ever exhibited any claim against the estate of Udney Hay, or that any of his creditors had been thereby in any way injured or defrauded.

3dly. That although it is alledged that Zacheus Peaslee held the said lands in trust for the said Udney Hay, it does not appear by the bill or the decree, that there was any declaration of trust in writing.

4thly. The decree is as well against the heirs, as against the administrator of Zacheus Peaslee, but the heirs were never made parties to the bill.

5thly. It does not appear by the decree that there was any answer put in to the bill, or any issue on which the cause was heard, or that the bill was taken *pro confesso.*

*Mitchell,* for the plaintiff in review.

*Keyes,* for the defendant.

CHIPMAN, Ch. J. delivered the opinion of the Court.

I shall first dispose of the 3d and 5th exceptions which have been taken to the decree under review. The 3d exception is, "That although it is alleged in the bill that Zacheus Peaslee held the said lands in trust for the said Udney Hay, it does not appear by the bill or the decree that there was any declaration of trust in writing." This exception we think is without foundation. It is true, it has been determined in the case of a bill for the specifick performance of a contract, required by the statute of frauds to be in writing, that unless it be stated in the bill, that the agreement was in writing, the defendant may demur for that cause. He may also plead that there is no agreement in writing, and it would be sufficient for the Orator to reply and prove a written agreement; but if the exception be not taken till the hearing, the defendant cannot object to proof of an agreement in writing, because not so stated in the bill, nor is it the course to set forth in the decree what evidence or proof was produced in the cause.

*Chittenden,*
December,
1814.

Peaslee
*vs.*
Barney.

The 5th exception is, " That it does not appear from the decree, that there was any answer to the bill—any issue on which the cause was heard, or that the bill was taken *pro confesso.*" This is certainly an omission of the Clerk who drew up the decree, but it appears to have been merely an omission of the Clerk, that the case was heard on answer and traverse—upon proof. We think such omission may be supplied if necessary, in a case like the present, which we do not decide, from the files and entries in the original cause, and that when the error alleged arises from a mere omission or misrecital through the negligence or mistake of the Clerk who drew up the decree, the Court will look into the files in the case to supply and correct it.

The other exceptions raise some very important questions, particulaly, the first exception.

The principal question is, whether it would be competent to the administrator to impeach and set aside an act done by his intestate in his life time for the fraud of the intestate himself. Let us inquire what is the situation—what the rights and duties of an administrator. To all the purposes of the settlement of the estate, he represents the intestate. To that end, under the direction of the law, he has the disposal of the estate—he represents the intestate in all claims and rights beneficial to the estate, which the intestate himself had, or which were accruing. And with respect to the estate coming to his hands and possession, he represents the intestate in his liability to all legal claims and demands of others, except in certain special cases of tort, in which it is a maxim *Actio personalis moritur cum persona.* No man can, either at law or in equity, nor can his heirs, set aside any of his contracts because fraudulent on his part. And that which was never a right in the intestate, can never become a right and attach a remedy in the administrator. It is true, as has been argued, that a man, if defrauded by others, may have his remedy either in law or equity, and obtain relief according to the nature of his case; and the same right attaches in the administrator in virtue of his representative character; but the distinction between the cases is too obvious to need illustration.

It has been argued, that by our law, the administrator represents not only his intestate but his creditors also, especially where the estate is insolvent, he represents the intestate who is the debtor, and

*certainly the law cannot be construed into such an absurdity, as to *Chittenden,* vest in the same person and character in respect to the same subject, the conflicting rights and duties both of debtor and creditor: there is nothing in any law to countenance such a notion.

But the case is not without a remedy. The creditors who have been injured by the fraudulent act, may have a remedy to restore the estate fraudulently withdrawn, or encumbered in the hands of other persons, to the proper fund for the payment of debts. For this purpose, any creditor may bring a bill in behalf of himself and other creditors, against the party to the fraud, or against those who have the estate fraudulently in possession. In such case, the administrator, instead of being a party plaintiff, must be made a defendant, that he may by the decree be compelled to proceed with the estate recovered in the payment of the debts in a due course of administration. But the relief extends no farther. A creditor, at common law, may have his action against the person so fraudulently holding the property, charging him as executor *de son tort.* This, however, if not superceded by our law, could be but a partial and inconvenient remedy. But every person may, by act to take effect in his life time, or, by last will and testament, dispose of all, or any part of his property to others; and, whatever may be the strict moral character of such act, the law does not consider any injury done to the heirs or next of kin, But the creditors have, in respect of their debts, a general lien upon the property.

These principles established, put out of the present case, the question intended to be raised, under the second exception, whether it ought not to have been alleged in the bill, that there were creditors of Udney Hay, the intestate, who were injured by the fraud. Certainly, if there were no creditors, no body was injured; but if there were creditors, it was for them and not the administrator to pursue the remedy.*

I will further observe, that the bill and decree in this case, seem to have gone, at least in part, upon a principle totally inconsistent with that full dominion and right of disposal which our law gives to every person over his property; and to suppose that every one is under some duty of perfect and legal obligation to preserve his property secure to those who may be his heirs. But this is not so.—

*Margin: Chittenden, December, 1814. Peaslee vs. Barney.*

---

* 7 Johnson's Rep. 161. Osborne *vs.* Morse. Cro. James, Haws *vs.* Leader.

*Chittenden,*
*December,*
*1814.*

Even as it respects children whose claim from nature is the strong-est, the claim is contingent and subject to the dominion, control and disposition of the parents, either by act *inter vivos,* or by last will and testament : he may make an effectual gift of all his property without leaving any thing to his children, or he may dispose of it to and among his children, in any proportion or to any of them. And to his children and nearest heirs, it is a sufficient reason to say, such was my will and pleasure. The consequence of these principles is, the decree is erroneous and must be reversed.